UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| WORLDWIDE TRANSPORTATION SERVICES, INC., | Case No. 16-11136-LMI |
| WORLDWIDE INVESTMENTS I, LLC, | Case No. 16-11183-LMI |
| WORLDWIDE INVESTMENTS II, LLC | Case No. 16-11185-AJC |
| WORLDWIDE INVESTMENTS III, LLC | Case No. 16-11189-RAM |

Debtors.

_____/

**DECLARATION OF ALEX A. MALEK IN SUPPORT OF**
**THE DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS**

I hereby declare that the following is true to the best of my knowledge, information, and belief:

**I.    INTRODUCTION**

1. My name is Alex A. Malek. I am over the age of 18 and am competent to testify. I am the President ("President") of Worldwide Transportation Services, Inc. ("Debtor") and the sole member of the managing member of related debtors, Worldwide Investments I, LLC, Worldwide Investments II, LLC and Worldwide Investments II, LLC (collectively the "Related Debtors and together with the Debtor collectively the "Debtors").

2. To minimize any adverse effects on the Debtor's business as a result of the commencement of this Chapter 11 case, the Debtors intend to request various types of relief in certain "first day" applications and motions (collectively, the "First Day Motions"). The First Day Motions seek relief and are designed to, among other things: (a) continue the Debtor's

{37227805;2}

operations while in Chapter 11 with as little disruption as possible; (b) allow the Debtor to continue serving its valued customers and operate its business pending a restructuring of the Debtor's debt; and (c) establish procedures for the smooth and efficient administration of this case. The relief requested in the First Day Motions will be crucial to the success of the Debtor's efforts to facilitate an orderly reorganization to be effectuated through the contemplated restructuring of the Debtor's debts.

3. I submit this declaration (the "Declaration") in support of the Debtors' Chapter 11 voluntary petitions and the First Day Motions. As the President of the Debtor and the control person for the sole member of the related Debtors, I have personal knowledge of the Debtor's books and records, and the Debtor's financial and operational affairs. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees or advisors. In making the statements herein based upon my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees, I have relied upon these employees to accurately record, prepare and collect any such documentation and other information.

4. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or my personal opinion, except as otherwise noted. I am authorized to submit this Declaration on behalf of the Debtors.

A.  **The Chapter 11 Filing.**

5. On January 26, 2016 and January 27, 2016, (the "Petition Dates"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

6. As of the date hereof, no official creditors committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

7. The Debtors are operating their business and managing its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**B.   Description of Debtor Worldwide Transpiration Service Inc.'s Business and Reason for Filing Chapter 11.**

8. The Debtor provides ground transportation services for corporate events, roadshows, private aviation, airport transfers, sightseeing tours, sporting events, and other customized trips throughout South Florida, Atlanta, Chicago, Washington D.C., Los Angeles, and San Francisco. The Debtor utilizes a fleet of 71 corporate sedans, executive limousines and vans and maintains its corporate headquarters in Miami, Florida. The Debtor together with its predecessor-in-interest has operated its business since 2001. The debtors, Worldwide Investments I, LLC, Worldwide Investments II, LLC, and Worldwide Investments III, LLC collectively own forty-four of the For-Hire Limousine Service Licenses used in the operation of the debtor, Worldwide.

9. The Debtor has 20 employees and approximately 40 drivers who are independent contractors.

10. These Chapter 11 filings were precipitated by dozens of Worldwide's drivers suing Worldwide and its principal pursuant to the federal Fair Labor Standards Act alleging that they were improperly classified as independent contractors instead of employees and seeking damages for back pay, benefits and attorney's fees and costs. Worldwide also suffered operating losses because of the "unfair" competition of the ride sharing companies permitted to operate in Miami and Broward counties without incurring the same regulatory expenses and other requirements that Worldwide must endure.

11. The Related Debtors are holding companies for various licenses utilized in the Debtor's operations.

C. **The First Day Motions**

12. The Debtors intend to file an emergency motion seeking entry of an interim and final order authorizing the Debtors to obtain credit (the "DIP Loan") and use cash collateral (the "DIP Motion". The DIP Loan is necessary because without immediate funding the Debtor will be unable to make its payroll due Friday January 29, 2016 and satisfy its pre-petition payroll obligations[1] and meet its other expenses going forward, including crucial payments to its drivers. Thus, the Debtor will "go dark" and cease operating after January 26, 2016 unless the relief is granted.

13. The Debtors' bankruptcy estates will suffer irreparable harm if the DIP Motion is not granted because if Worldwide ceases operations it will lose its fair market and ongoing concern value which greatly exceeds the liquidation value. Also, if the Debtor ceases operating and liquidates the collectability of its substantial AR in the approximate amount of $1.1 M will be jeopardized.

14. The bankruptcy estates of the Related Debtors will likewise suffer irreparable harm if the credit and use of cash collateral is not authorized as the value of these holding companies is directly linked to the ongoing concern value of the Debtor as the licenses have more value if sold together with the Debtor's assets as an ongoing concern.

15. The Debtors are unable to obtain a loan on an unsecured basis or that is allowable as an administrative claim under Section 503(b)(1) of the Bankruptcy Code. Nor, could the

---

[1]Worldwide is filing a first day motion seeking to pay priority pre-petition payroll which will be conditioned upon the employees and drivers agreement to continue working for the debtor, Worldwide for the next 60 days until the contemplated sale of the Debtors' assets can be completed.

{37227805;2}              - 4 -

Debtors obtain financing secured by a junior lien. The Debtors' assets are encumbered by pre-petition liens leaving no property that is not subject to a lien to secure the DIP Loan.

16. The Debtors have sought, right up to the time of the filing of these cases, unsuccessfully, to obtain such financing.

17. Because of the Debtors' immediate need for the liquidity provided by the DIP Loan, the Debtors, in the exercise of their sound business judgment, and in consultation with their professional advisors, has concluded that the DIP Lender is the only lender able to offer a post-petition credit facility sufficient to meet the Debtors' working capital and case funding needs on the terms, and within the time frame, required by the Debtors. Indeed, without immediate access to liquidity sufficient to sustain normal course business operations, the value of the Debtors' assets and their bankruptcy estates will be irreparably harmed to the extreme detriment of the Debtors' creditors, employees and estates.

18. Moreover, the Debtors have exercised sound business judgment in negotiating and agreeing to the proposed DIP Loan the terms of which are fair and reasonable, and are in the best interests of their estates.

19. The Debtors also intend to file a first day motion seeking approval of bid procedures and authority to sell substantially all the assets of the Debtors to a Stalking Horse subject to higher and better offers.

20. Assuming the Debtors are authorized to obtain credit and use cash collateral, the sale must close in the next 45 to 50 days enabling the assets to be sold as an ongoing concern. If the sale does not close in that timeframe the Debtor will be out of cash and forced to cease operations which will preclude any sale of the Debtor's business as an ongoing concern together with the assets of the Related Debtors.

## 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 27, 2016.

_____
Alex A. Malek
President